UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-CV-01336-PAB-BNB

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION,

    Applicant,

v.

RAYMOND Y. CHIN, KENYATTO MONTEZ JONES,
HENNING D. MORALES, BENJAMIN J. PORT,
ALAN M. ROTHMAN, RONALD C. TOUCHARD,
MISTY D. TOUCHARD, AUGUST, INC., DELTA
CONSULTING, LLC, EWORLD COMPANIES, INC.,
GLOBALQX, KNIGHT CONSULTING CORP.,
MONARCHY CAPITAL, INC., NEBTROPOLIS
CONSULTING, INC., NEWPORT HOLDINGS, INC.,
NEWPORT STOCKS, INC., NUTRIPURE BEVERAGES,
INC., PREZENSE, INC., RMT CONSULTING, INC.,
SUNRISE CONSULTING GROUP, INC., TOUCHARD FAMILY
TRUST, and RBID.COM, INC.

    Respondents.

---

**RESPONSE TO ORDER TO SHOW CAUSE WHY AN ORDER COMPELLING
COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS SHOULD NOT ISSUE**

---

I.    INTRODUCTION

"No personal shall be compelled ... to be a witness against himself." Fifth Amendment to the United States Constitution. Yet that is exactly what the Applicant, United States Securities and Exchange Commission (the "Commission") seeks to do by virtue of overly broad and oppressive subpoenas duces tecum. Respondents Ronald Touchard, Misty Touchard, August,

Inc., Newport Stocks, Inc., RMT Consulting, Inc. and Touchard Family Trust respectfully submit this Response to the Court's Order to Show Cause Why an Order Compelling Compliance with Administrative Subpoenas Should Not Issue. Because responding to the subpoenas as written would violate Respondents' Fifth Amendment Privilege against self-incrimination, Respondents respectfully request that this Court decline to issue an order compelling compliance with the subpoenas.

II. PROCEDURAL HISTORY

On July 21, 2011, the Commission issued subpoenas to Respondents Ronald Touchard and Misty Touchard. The subpoenas contained 10 categories of definitions and instructions and went on to demand production of 11 categories of documents that in turn contained 67 sub-categories and encompassed a period of four and a half years. On August 25, 2011, the Touchards' prior counsel, Irving Einhorn, wrote to the Commission explaining that the Touchards would be asserting their Fifth Amendment privilege in response to the subpoenas. Mr. Einhorn reiterated that position in his correspondence of November 14, 2011 to the Commission. (Declaration of Rachael Clark filed in support of application for order to show cause, Ex. 11.)

On January 23, 2012, the Commission served subpoenas on Respondents August, Inc., Newport Stocks, Inc., RMT Consulting, Inc., and the Touchard Family Trust, "c/o Ronald Touchard/Misty Touchard." (Clark Decl., Exs. 17, 20, 23 and 24.) On February 2, 2012, Mr. Einhorn again corresponded with the Commission, stating that each of his clients would assert their Fifth Amendment Privilege and explaining the rationale for that decision. (Clark Decl., Ex. 25.) In addition, Mr. Einhorn expressed his concern with the breadth of the subpoenas. *Id.*

The Commission then brought this application for an order compelling each of the Touchard Respondents to respond to the various subpoenas.

III. ARGUMENT

    A. **Respondents Have Properly Asserted Their Fifth Amendment Privilege in Response to the Commissions' Subpoenas**

The United States Constitution's Fifth Amendment protects "a person…against being incriminated by his own compelled testimonial communications." *Fisher v. United States,* 425 U.S. 391, 409 (1976). "Although the contents of a document may not be privileged, the act of producing the document may be." *United States v. Doe,* 465 U.S. 605, 611-612 (1984). "'The act of production' itself may implicitly communicate 'statements of fact.' By 'producing documents in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic.'" *United States v. Hubbell,* 530 U.S. 26, 36 (2000) (quoting *Doe v. United States,* 487 U.S. 201, 209 (1988).) Thus, "the Fifth Amendment applies to acts that imply assertions of fact." *Doe v. United States, supra,* 487 U.S. at 209. It is "the attempt to force [a respondent] to 'disclose the contents of his own mind' that implicates the Self-Incrimination Clause." *Doe v. United States, supra,* 487 U.S. at 211 (quoting *Curcio v. United States,* 354 U.S. 118, 128 (1957).) Moreover, "[c]ompelled testimony that communicates information that may 'lead to incriminating evidence' is privileged even if the information itself is not inculpatory." *United States v. Hubbell, supra,* 530 U.S. at 38 (quoting *Doe v. United States, supra,* 487 U.S. at 208, n. 6).

The subpoenas directed to Ronald Touchard and Mindy Touchard require them to produce documents or in some cases, lists of information in lieu of documents (e.g., a list of "all entities you own, control, or in which you own a beneficial interest, including the business name, state of incorporation...and names of officers, directors, employees, and shareholders" and "telephone and service providers that you utilize and the accompanying phone numbers") that would clearly require disclosure of what was in their mind and/or implicitly admit that the documents existed, were in their possession or control, and were authentic. This constitutes an assertion of fact as the court described in *Hubbell* which runs afoul of Respondents Fifth Amendment protections. The extensive nature of the subpoenas also makes it clear that the Commission is on a fishing expedition, looking for information that will lead to incriminating evidence. Respondents properly asserted their Fifth Amendment privilege.

Ronald Touchard and Misty Touchard have also properly asserted the Fifth Amendment privilege in response to the Commission's subpoenas to each of the Touchard entities. The Fifth Amendment privilege "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Doe v. United States*, 487 U.S. 201, 211 (1988) (quoting *Kastigar v. United States*, 406 U.S. 441, 445 (1972). "The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime." *United States v. Hubbell* 530 U.S. 27, 38 (2000) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)).While typically a corporate custodian of records cannot resist a subpoena served on the corporation, the issue is not so clear when the custodian of records is the sole

officer, shareholder or controlling person of the corporation. *See, e.g., Braswell v. United States,* 487 U.S. 99, 118, n. 11 (1988).

Each of the subpoenas directed to August, Inc., Newport Stocks, Inc., RMT Consulting, Inc., and the Touchard Family Trust, were sent "c/o Ronald Touchard/Misty Touchard." Accordingly, a jury cannot avoid coming to the conclusion that Ronald or Misty Touchard possessed, controlled, and authenticated documents produced on behalf of these entities and had knowledge of their contents. This is the exact scenario that the court left open in *Braswell*. In addition, the disclosure of documents by custodians of record of small family corporations who themselves are clearly targets of a government investigation would "furnish a link in the chain" needed to prosecute them individually. Hence, the act of production alone would potentially incriminate the individual custodians. Because the production of documents by Ronald Touchard or Misty Touchard as custodian of records for the Touchard entities would tend to incriminate them, they have properly asserted their Fifth Amendment privilege with respect to those subpoenas.

**B.    The Subpoenas Are Impermissibly Overbroad**

Each of the Commission's subpoenas seeks the compilation of documents or a list of information related to 11 different requests that themselves contain subparts that identify yet more individuals and entities (67 to be exact) that, couple with definitions and instructions that expand each request, make the subpoenas the functional equivalent of a set of Matryoshka dolls. As the court noted in *Hubbell*:

> It is apparent from the text of the subpoena itself that the prosecutor needed respondent's assistance both to identify potential sources of information and to produce those sources.... Given the breadth of the description of the 11 categories of documents called for by the subpoena, the collection and production of the materials demanded was tantamount to answering a series of interrogatories asking a witness to disclose the existence and location of particular documents fitting certain broad descriptions. The assembly of literally hundreds of pages of material in response to a request for "any and all documents reflecting, referring, or relating to any direct or indirect sources of money or other things of value received by or provided to" an individual or members of his family during a three year period... is the functional equivalent of the preparation of an answer to either a detailed written interrogatory or a series of oral questions at a discovery deposition. Entirely apart from the contents of the 13,120 pages of materials that respondent produced in this case, it is undeniable that providing a catalog of existing documents fitting within any of the 11 broadly worded subpoena categories could provide a prosecutor with a "lead to incriminating evidence," or "a link in the chain of evidence needed to prosecute."

*Hubbell, supra,* 540 U.S. at 41.

6

The court went on to state:

> It was unquestionably necessary for respondent to make extensive use of "the contents of his own mind" in identifying the hundreds of documents responsive to the requests in the subpoena. See *Curcio v. United States*, 354 U.S. 118, 128, 1 L. Ed. 2d 1225, 77 S. Ct. 1145 (1957); *Doe v. United States,* 487 U.S. at 210. The assembly of those documents was like telling an inquisitor the combination to a wall safe, not like being forced to surrender the key to a strongbox. 487 U.S. at 210, n. 9. The Government's anemic view of respondent's act of production as a mere physical act that is principally non-testimonial in character and can be entirely divorced from its "implicit" testimonial aspect so as to constitute a "legitimate, wholly independent source" (as required by *Kastigar*) for the documents produced simply fails to account for these realities.

*Hubbell, supra,* 540 U.S. at 43.

Like the subpoena in *Hubbell, t*he Commission's subpoena requires revelation of the contents of the Touchards' minds when they are asked to respond to categories like number 8, which asks them to list every telephone call placed from or through any number associated with them or their spouse over a nearly five year period! These broad subpoenas compel the disclosure of information that would provide a prosecutor with a "lead to incriminating evidence" or "a link in the chain" of evidence necessary to prosecute.

The breadth of the subpoenas also imposed an undue burden on the Touchard Respondents. A party must avoid serving a subpoena that imposes on undue burden or expense. Fed. R. Civ. Proc. § 45(c)(1). When a subpoena is facially overbroad, the court may find that it imposed an undue burden on the responding party. *Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 174 (D.C. Dist. Col. 1998). As discussed above, the time period encompassed by the subpoenas along with the multiple definitions, categories, and subcategories (including a request to identify every telephone call made during a nearly five year period), makes the subpoenas facially overbroad and therefore impermissible under the Federal Rules of Civil Procedure and case law.

IV. <u>CONCLUSION</u>

For the foregoing reasons, Respondents Ronald Touchard, Misty Touchard, August, Inc., Newport Stocks, Inc., RMT Consulting, Inc. and Touchard Family Trust respectfully request that this Court decline the Commission's request to issue an order directing compliance with its subpoenas and issue an order instead quashing and/or modifying the subpoenas.

Dated: June 21, 2012              Respectfully submitted,

                                                    /s/ Shirley Hayton
Edward Gartenberg
Shirley Hayton
GARTENBERG GELFAND HAYTON & SELDEN LLP
801 S. Figueroa St., Suite 1270
Los Angeles, CA 90017
(213) 542-2100
egartenberg@gghslaw.com
shayton@gghslaw.com

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) and not a party to the within action. My business address is 801 South Figueroa Street, Los Angeles, CA 90017.

On June 21, 2012, I served the foregoing document described as **RESPONSE TO ORDER TO SHOW CAUSE WHY AN ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUPBOENAS SHOULD NOT ISSUE** on the interested parties in this action by placing ( ) the original **(X)** true copies thereof enclosed in sealed envelopes addressed as follows:

Nicholas P. Heinke
Rachael Clarke
U.S. Securities and Exchange Commission
1801 California Street, Suite 1500
Denver, CO 80202
HeinkeN@sec.gov
ClarkeRa@sec.gov

| ( ) BY MAIL | (X) E-FILING |
|---|---|
| I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit. | By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic serve on counsel who are registered with the CM/EFC system. |
| ( ) BY OVERNIGHT DELIVERY | ( ) BY PERSONAL DELIVERY |
| Said document was placed in an envelope designated by the express service center and placed for collection in a box regularly maintained by said carrier with whom we have a direct billing account, to be delivered to the office of the addressee listed above on the next business day. | I caused personal service of the above-referenced document by requesting that an agent or employee of First Legal Support Services deliver to the office of the recipient named above, either by handing the document(s) to the recipient, or by leaving the document(s) with the receptionist or other person apparently in charge of the recipient's office. |

(X)     FEDERAL    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

(X)     EXECUTED on June 21, 2012, at Los Angeles, California.

/s/ Bridget Masilon
Bridget Masilon