IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-01336-PAB-BNB

UNITED STATES SECURITIES AND EXCHANGE COMMISSION,

Applicant,

v.

RAYMOND Y. CHIN,
KENYATTO MONTEZ JONES,
HENNING D. MORALES,
BENJAMIN J. PORT,
ALAN M. ROTHMAN,
RONALD C. TOUCHARD,
MISTY D. TOUCHARD,
AUGUST, INC.,
DELTA CONSULTING, LLC,
EWORLD COMPANIES, INC.,
GLOBALQX,
KNIGHT CONSULTING CORP.,
MONARCHY CAPITAL, INC.,
NEBROPOLIS CONSULTING, INC.,
NEWPORT HOLDINGS, INC.,
NEWPORT STOCKS, INC.,
NUTRIPURE BEVERAGES, INC.,
PREZENSE, INC.,
RMT CONSULTING, INC.,
SUNRISE CONSULTING GROUP, INC.,
TOUCHARD FAMILY TRUST, and
RBID.COM, INC.,

Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on my Order to Show Cause Why An Order Compelling Compliance

With Administrative Subpoenas Should Not Issue [Doc. # 7] (the "Order to Show Cause").  I

respectfully RECOMMEND that the Order to Show Cause be MADE ABSOLUTE in part and

be DISCHARGED in part as specified.[1]

## I.  ORIGIN OF THE SUBPOENAS

In the summer of 2010, the SEC discovered what it believes to be a "pump and dump" scheme to (1) artificially inflate the value of stocks through false and misleading statements and (2) sell the shares at the overvalued price.  The Commission issued orders opening an investigation of the pump and dump scheme, and the subpoenas in question were issued pursuant to the orders to investigate.  The respondents have been identified by the SEC as being involved in the pump and dump scheme.

In an *Ex Parte* Application for Order to Show Cause and for an Order Compelling Compliance With Administrative Subpoenas [Doc. # 1] the SEC alleged:

> Despite proper service and actual knowledge of the Subpoenas, Respondents have failed to comply.  In many instances, Respondents have simply invoked a blanket claim of a Fifth Amendment privilege, without describing their claims on a particularized basis, as required by both the Subpoenas and the relevant Tenth Circuit law.  In other cases, Respondents have not fully complied or not complied at all.
>
> *    *    *

---

[1]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

> While certain Respondents may have valid Fifth Amendment
> claims to certain documents, both the subpoenas and relevant
> Tenth Circuit law require more than a simple, blanket assertion [of
> the Fifth Amendment].  Respondents must assert their privilege
> claims on a document-by-document basis in order for the
> Commission, and this Court, to assess the validity of the claims.
> Further, certain categories of documents--such as records the
> Respondents hold in their capacity as corporate custodians, and
> records about which the Commission knew prior to the issuance of
> the subpoenas--are not protected by the Fifth Amendment and
> must be produced. . . .

*Ex Parte* Application [Doc. # 1] at ¶2, 27.

I issued the requested Order to Show Cause [Doc. # 7] and set the matter for a hearing on September 5, 2012.  Minute Order [Doc. # 36].  The Order to Show Cause is directed against  22 respondents.

Six respondents--Ronald C. Touchard; Misty D. Touchard; August, Inc.; Newport Stocks, Inc.; RMT Consulting, Inc.; and Touchard Family Trust (the "Touchard Respondents")-- appeared at the show cause hearing through counsel.

Three respondents--Benjamin J. Port; Alan M. Rothman; and RBID.com, Inc.-- purported to reach an agreement with the SEC.  See Joint Motion for Entry of Order [Doc. # 24] (concerning Mr. Port); Joint Motion for Entry of Order [Doc. # 29] (concerning Mr. Rothman and RBID.com).  I entered orders, proposed by the parties, compelling those respondents to comply with the SEC's administrative subpoenas.  Order [Doc. # 31] (concerning Mr. Port); Order [Doc. # 32] (concerning Mr. Rothman and RBID.com).  Mr. Port did not appear at the show cause hearing.  Mr. Rothman did appear and attempted to represent himself and RBID.com.  Mr. Rothman was allowed to proceed pro se on behalf of himself personally, but he could not represent RBID.com because he is not a member of the bar of this court and entity

defendants, like RBID.com, may appear only through a lawyer admitted to this court's bar. D.C.COLO.LCivR 83.3D.

Kenyatto Jones appeared and attempted to represent himself and three entities--Prezense, Inc.; GlobalQX; and Nutripure Beverages, Inc.  Mr. Jones was allowed to proceed pro se on behalf of himself personally, but he could not represent the entities because he is not a lawyer admitted to the bar of this court.  D.C.COLO.LCivR 83.3D.

The remaining respondents--Raymond Y. Chin; Henning D. Morales; Delta Consulting, LLC; EWorld Companies, Inc.; Knight Consulting Corp.; Monarchy Capital, Inc.; Nebtropolis Consulting, Inc.; Newport Holdings, Inc.; and Sunrise Consulting Group, Inc.--did not appear at the show cause hearing and made no response to the Order to Show Cause.

An administrative agency's investigative subpoenas will be judicially enforced if (1) its investigation will be conducted pursuant to a legitimate purpose, (2) the subpoena seeks information that may be relevant to the purpose, (3) the information sought is not already within the agency's possession, and (4) all required administrative steps have been followed.  United States v. Powell, 379 U.S. 48, 57-58 (1964); Application to Enforce Administrative Subpoenas Duces Tecum of SEC v. Knowles, 87 F.3d 413, 415-16 (10th Cir. 1996)(applying the Powell test to the enforcement of SEC subpoenas).  No respondent challenges the propriety of the subpoenas under Powell.

The subpoenas include a section captioned "Definitions and Instructions."  See, e.g., Subpoena to Misty D. Touchard, Exh. A-1, at pp. 1-2.  Instruction 10 states:

> If you claim attorney-client privilege, or any other privilege or
> protection from production, as to any of the requests below,
> provide a list of the subject documents, indicating the date
> prepared, authors, recipients, subjects, and the privilege or

4

protection claimed, sufficiently identifying the documents to which you claim the privilege or protection attaches, in order that the staff may determine whether to request <u>in camera</u> inspection by a federal district court judge.

<u>Id</u>. at p. 2.

## II.  THE TOUCHARD RESPONDENTS

Subpoenas were served on Ronald C. Touchard and Misty D. Touchard, husband and wife.  Declaration of Rachael Clarke, Exh. A-7, at ¶19(d).  In addition, subpoenas were served on the following entities controlled by the Touchards:

August, Inc.: "Ron Touchard is the CEO of August, a Delaware corporation, and he and Misty Touchard are joint account holders on at least one of August's brokerage accounts." <u>Id</u>. August is alleged to have received and subsequently sold stocks involved in the pump and dump, <u>id</u>.;

Newport Stocks, Inc.:  The SEC asserts that Newport Stocks and Newport Holdings are affiliated or may be the same entity.  <u>Id</u>.  Ron Touchard is identified as the "contact person" for Newport Holdings.  <u>Id</u>. Newport Holdings is alleged to have been involved in the pump and dump scheme, <u>id</u>.;

RMT Consulting, Inc.:  "Ron Touchard is the Secretary and Misty Touchard is the President  and Treasurer of RMT Consulting, a Delaware corporation." <u>Id</u>.  RMT is alleged to have traded in stocks involved in the pump and dump scheme, <u>id</u>.;

Touchard Family Trust:  Ronald Touchard is a beneficial owner of shares held by the Touchard Family Trust.  <u>Id</u>.

The subpoenas served on the Touchard Respondents command the production of documents.  The law is settled that "[t]he Fifth Amendment does not shield from discovery the contents of any documents [a witness] voluntarily created, even if the contents incriminate him." Foster v. Hill, 188 F.3d 1259, 1269 (10th Cir. 1999).  Instead, the Fifth Amendment may be invoked to bar the production of documents only if the "act of producing a document would itself be both incriminating . . . and testimonial."  Id.  The circuit court stated:

> As the Supreme Court explained in Fisher [v. United States, 425 U.S. 391 (1976)], that necessitates an inquiry focused on proof of the documents existence, possession, and authenticity:
>
> "The act of producing evidence in response to a subpoena . . . has communicative aspects of its own, wholly aside from the contents of the papers produced.  Compliance with the subpoena tacitly concedes the existence of the papers demanded and their possession or control by their owner or the owner's agent.  It also would indicate the owner or agent's belief that the papers are those described in the subpoena. . . ."

Foster, 188 F.3d at 1269-70 (quoting Fisher, 425 U.S. at 410).

## A.  RONALD AND MISTY TOUCHARD INDIVIDUALLY

In response to the subpoenas, Ronald and Misty Touchard, through counsel, asserted their Fifth Amendment rights against self incrimination stating: "After speaking with my clients regarding this matter, they have decided to assert their Fifth Amendment privileges against compulsory self-incrimination.  Under the circumstances they will not be producing any responses to the subpoena other than this letter."  Letter from Irving M. Einhorn dated 8/25/2011, Exh. 7.

Ronald and Misty Touchard have not produced any documents in response to the subpoenas served on them.

The issue before me is not whether documents responsive to the subpoenas are immune from production based on the Fifth Amendment.  Instead, the thrust of the SEC's argument is that the Touchard Respondents have improperly asserted a "blanket" objection based on the Fifth Amendment right against self-incrimination and have failed to claim the protection on a document-by-document basis through a privilege log or otherwise.  Memorandum of Law [Doc. # 3] at pp. 15-17.  Use of a blanket assertion of the Fifth Amendment right, according to the SEC, precludes it from meaningfully evaluating the claim and seeking judicial relief to compel production of specific documents if the protection against self-incrimination is improperly asserted.  Id.

In support of its position, the SEC relies principally on United States v. Schmidt, 816 F.2d 1477 (10th Cir. 1987).  There, the Tenth Circuit Court of Appeals held that the respondents had prematurely attempted to invoke their Fifth Amendment rights based on a generalized fear of criminal prosecution but without establishing any substantial or real risk of criminal incrimination resulting from responding.  The circuit court required a response to the subpoenas served, and outlined how that response was to be made:

> In order to validly raise the Fifth Amendment privilege, appellants must comply with the instructions of the summonses.  At the appropriate time, appellants may interpose their claim of Fifth Amendment privilege pertaining to specific documents and in response to individual questions upon their reasonable belief that a compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability.  At that time, the appropriate parties could then seek judicial determination on each claim of privilege with respect to the specific documents summoned and questions asked by the IRS.

Schmidt, 816 F.2d at 1482 (internal citations omitted).

Also instructive is the circuit court's decision in Foster v. Hill, 188 F.3d 1259 (10th Cir.

1999), reversing the bankruptcy court's order rejecting a Fifth Amendment claim. In <u>Foster</u>, a

bankruptcy trustee argued that the production by a bankrupt's counsel of certain subpoenaed

documents was not precluded by the Fifth Amendment. The trustee urged the bankruptcy court

to conduct an *in camera* review of the documents, but the court refused the request. On review,

the circuit court ruled:

> [T]his court's review of an act-of-production claim . . . shows how
> fact-intensive the analysis is. We cannot review such a claim
> without a record or fact-specific analysis. By rejecting the
> suggested *in camera* review, the bankruptcy court has prevented
> this court from determining if any of [counsel's] acts of production
> could incriminate [the bankrupt] by affirming a document's
> existence, authenticity, or possession.
>
> *     *     *
>
> Lacking a record, we cannot tell if any of [counsel's] acts of
> production might entail testimony as to a document's existence,
> possession, or authenticity. The court must allow him on remand
> to demonstrate, as to each document surrendered . . ., [that
> production] would have been testimonial and incriminating. . . .
>
> *     *     *
>
> We REMAND the case to allow the bankruptcy court to review the
> disputed documents *in camera*. That court must determine . . .
> whether the Fifth Amendment barred it from compelling
> [counsel's] act of producing the document. . . .

<u>Foster</u>, 188 F.3d at 1270, 1272, 1273.

The apparent lesson of <u>Schmidt</u> and <u>Foster</u> is that a blanket assertion of the Fifth

Amendment is not allowed. Instead, a party seeking to invoke that Fifth Amendment must do so

in a manner that allows the trial court to make a fact-intensive record addressing whether the act

of producing tacitly concedes the existence, possession, and authenticity of incriminating

materials. That record frequently involves use of a privilege log like that commanded by

Instruction No. 10 to the subpoenas. <u>See</u>, <u>e.g.</u>, <u>SEC v. Caramadre</u>, 717 F. Supp. 2d 217, 224 (D.

R.I. 2010)(noting that "'blanket' invocation of the Fifth Amendment does not get Respondents

off the hook"; that the "proper procedure" is to raise the Fifth Amendment protection "with respect to each document"; and that this may be accomplished "by cataloguing any documents they hope to withhold in a privilege log"); United States v. Carlin, 2006 WL 2619800 *1 (E.D. Pa. Sept. 11, 2006)(stating that a respondent must assert the privilege as to each document requested "and may not rest on a 'blanket assertion' of the right against self-incrimination," and requiring the respondent to "create a log [for *in camera* review] describing each document he believed to be protected by the Fifth Amendment").

Ronald and Misty Touchard respond that under the specific and unique facts of this case the rule of Schmidt and Foster, requiring a document-by-document assertion of Fifth Amendment protection, is contrary to the Supreme Court's more recent pronouncements in United States v. Hubbell, 530 U.S. 27 (2000).  In Hubbell, the respondent was served with a subpoena that called for "[c]opies of all bank statements . . . including but not limited to all statements, registers and ledgers, cancelled checks, deposit items and wire transfers."  Id at 46 (subpoena category C).  Similarly here, the subpoenas served on the Ronald and Misty Touchard call for production of "[d]ocuments sufficient to identify all bank and brokerage accounts" including "[a]ll monthly and other periodic account statements. . . ."  Subpoena to Misty Touchard, Exh. A-1, at categories 1-2.[2]  The Hubbell subpoena called for production of "[a]ny and all tax returns and tax return information," 530 U.S. at 47 (subpoena category H), just as the subpoenas served on the Ronald and Misty Touchard require production of "[c]omplete tax returns including all schedules."  Subpoena to Misty Touchard, Exh. A-1, at category 3. Category F of the subpoena served in Hubbell required production of:

---

[2]The subpoenas served by the SEC on Ronald and Misty Touchard are identical.

> Any and all documents reflecting, referring, or relating to [the
> respondent's] schedule of activities, including but not limited to
> any and all calendars, day-timers, time books, appointment books,
> diaries, records of reverse telephone toll calls, credit card calls,
> telephone message slips, logs, other telephone records, minutes,
> databases, electronic mail messages, travel records, itineraries,
> tickets for transportation of any kind, payments, bills, expense
> backup documentation, schedules, and/or any other document or
> database that would disclose [the respondent's] activities from
> January 1, 1993 to the present.

530 U.S. at 47.  Categories 4, 5, and 8 of the subpoenas served on the Ronald and Misty

Touchard similarly command the production of documents containing the "names and telephone

numbers of [respondents'] business and personal contacts," respondents' "address book, contact

list, or Rolodex"; all documents "reflecting [respondents'] daily schedule of activities, including

but not limited to agendas, appointment books, calendars, date books, schedules, or diaries"; and

all documents "reflecting any and all telephone calls placed from or through any telephone

number, long distance calling service or cellular telephone service associated with any telephone

number installed at your home(s), office(s) or automobile(s). . . .  If you do not have copies of all

such statements, you may produce a list of the telephone and service providers that you utilize

and the accompanying phone numbers."  Subpoena to Misty Touchard, Exh. A-1, at categories 4,

5, 8.

     The Supreme Court found in <u>Hubbell</u> that "the collection and production of the materials

demanded was tantamount to answering a series of interrogatories" and "the functional

equivalent of an answer to either a detailed written interrogatory or a series of oral questions at a

discovery deposition."  530 U.S. at 41-42.  The Court continued:

> Entirely apart from the contents of the 13,120 pages of materials
> that respondent produced in this case, it is undeniable that
> providing a catalog of existing documents fitting within any of the

10

> 11 broadly worded subpoena categories could provide a prosecutor with a "lead to incriminating evidence," or "a link in the chain of evidence needed to prosecute."
>
>          \*     \*     \*
>
> In sum, we have no doubt that the constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the existence of sources of potentially incriminating evidence. That constitutional privilege has the same application to the testimonial aspect of a response to a subpoena seeking discovery of those sources.

Id. at 42-43.

     I agree with Ronald and Misty Touchard. Although Schmidt and Foster require a respondent asserting the Fifth Amendment protection against self-incrimination to do so specifically and on a document-by-document basis when responding to a subpoena which contains appropriate commands for production, Hubbell prohibits the SEC from requiring a detailed privilege log in response to subpoena categories which are "tantamount" to a "detailed written interrogatory or a series of oral questions at a discovery deposition." 530 U.S. at 41-41. Under those circumstances, requiring a document-by-document privilege log is prohibited by the Fifth Amendment because preparation of the log requires the respondent to make the testimonial communication that the records exist; are authentic; that the respondent has some connection to the documents; and that the respondent believes the papers produced are those described in the subpoena. Hubbell, 530 U.S. at 43; In re Grand Jury Empanelled March 19, 1980, 541 F. Supp. 1, \*3 (D. N.J. Feb. 4, 1981), *aff'd in part, rev'd in part sub nom.* United States v. Doe, 465 U.S. 605 (1984).

     The difference between subpoena categories to which a respondent must make a document-specific Fifth Amendment objection and those to which no such document-by-

document objection is necessary turns on whether the respondent is "being compelled to disclose the existence of incriminating documents which the Government is unable to describe with reasonable particularity." Hubbell 530 U.S. at 29-30.  For example, in Fisher v. United States, 425 U.S. 991 (1976), the Supreme Court found that the production of work papers prepared by a target's accountant was not testimonial:

> It is doubtful that implicitly admitting the existence and possession of the papers rises to the level of testimony within the protection of the Fifth Amendment.  The papers belong to the accountant, were prepared by him, and are the kind usually prepared by an accountant working on the tax returns of his client.  Surely the Government is in no way relying on the "truth-telling" of the taxpayer to prove the existence of or his access to the documents. The existence and location of the papers are a foregone conclusion and the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the papers.  Under these circumstances by enforcement of the summons no constitutional rights are touched.  The question is not of testimony but of surrender.

Id. at 441 (internal quotation and citations omitted).

The facts in Doe v. United States, 487 U.S. 201 (1988), presented a closer question. There, the government sought an order requiring a grand jury target to execute a form consenting to the disclosure of documents concerning any foreign bank accounts over which the target had a right of withdrawal.  Id. at 203-04.  The district court denied the motion, reasoning that "compelling execution of the consent directive might lead to the uncovering and linking of [the target] to accounts that the grand jury did not know were in existence."  Id. at 204-05.  The Fifth Circuit Court of Appeals reversed finding that the Fifth Amendment was not violated by requiring execution of the form.  In affirming the circuit court, the Supreme Court began by noting that "[t]he difficult question whether a compelled communication is testimonial for

purposes of applying the Fifth Amendment often depends on the facts and circumstances of the

particular case." <u>Id</u>. at 214-15.  The Court then found that execution of the form was not

testimonial because "the form does not acknowledge that an account is in existence or that it is

controlled by petitioner."  <u>Id</u>.  Moreover:

> The form does not even identify the relevant bank.  Although the
> executed form allows the Government access to a potential source
> of evidence, the directive itself does not point the Government
> toward hidden accounts or otherwise provide information that will
> assist the prosecution in uncovering evidence.  The Government
> must locate the evidence by the independent labor of its officers. . .
> .
>
> By signing the form, [the target] makes no statement, explicit or
> implicit, regarding the existence of a foreign bank account of his
> control over any such account.  Nor would his execution of the
> form admit the authenticity of any records produced by the bank.

<u>Id</u>. at 215-16.  The clear implication, however, is that the target could not be required, consistent

with the Fifth Amendment, to turn over records revealing the identity or location of a foreign

bank account within his control about which the government had no knowledge.

A different result was reached in <u>United States v. Doe</u>, 465 U.S. 605 (1984).  There, the

district court refused to enforce a grand jury subpoena requiring production of "numerous

records relating to two of [the target's] companies, including ledgers, journals, workpapers,

vouchers, bank statements, contracts, corporate minutes . . .; cancelled checks, check stubs and

deposit tickets connected with specified bank accounts . . .; and the telephone toll records of

certain businesses."  <u>In re Grand Jury Empanelled March 19, 1980</u>, 680 F.2d 327, 328-29 (3d

Cir. 1982).  The district court found that "[i]n yielding to the command of the subpoena, [the

target] may be required to make any one of several communications.  The mere act of producing

the documents may be considered a communication of testimonial significance as an admission

that the subpoenaed records exist and that they are authentic.  In addition, the act of production

may indicate a belief that the papers produced are those described in the subpoena."  In re Grand

Jury Empanelled March 19, 1980, 541 F. Supp. 1, *3 (D. N.J. Feb. 4, 1981)(internal quotations

and citations omitted).  The Third Circuit Court of Appeals affirmed, stating:

> In Fisher, "the existence and location of the papers (was) a
> foregone conclusion and the taxpayer add(ed) little or nothing to
> the sum total of the Government's information by conceding that
> he in fact ha(d) the papers."  425 U.S. at 411. . . .  In the matter sub
> judice, however, we find nothing in the record that would indicate
> that the United States knows, as a certainty, that each of the myriad
> documents demanded by the five subpoenas in fact is in the
> appellee's possession or subject to his control.  The most plausible
> inference to be drawn from the broad-sweeping subpoenas is that
> the Government, unable to prove that the subpoenaed documents
> exist--or that the appellee even is somehow connected to the
> business entities under investigation--is attempting to compensate
> for its lack of knowledge by requiring the appellee to become, in
> effect, the primary informant against himself.  As we read Fisher,
> however, this the fifth amendment does not permit the Government
> to do.

In re Grand Jury, 680 F.2d at 335.  The Supreme Court affirmed this portion of the lower court's

holding. In doing so, the Supreme Court relied heavily on the explicit factual finding of the

district court that producing the documents would involve testimonial self-incrimination.  Doe,

465 U.S. at 614.  In addition, the Supreme Court stated:

> By producing the documents, respondent would relieve the
> Government of the need for authentication.  These allegations were
> sufficient to establish a valid claim of the privilege against self-
> incrimination.  This is not to say that the Government was
> foreclosed from rebutting respondent's claim by producing
> evidence that possession, existence, and authentication were a
> foregone conclusion.  In this case, however, the Government failed
> to make such a showing.

Id. at 614 n.13.

14

The documents commanded by the subpoenas served on Ronald and Misty Touchard, in most instances, are testimonial.  For example, categories 1, 6, and 8 of the subpoenas are patently testimonial insofar as they request the respondents to "provide a list containing the information required by this paragraph" or to "provide a list of the telephone and service providers that you utilize and the accompanying phone numbers."  Subpoena to Misty Touchard, Exh. A-1.  Although more subtle, I find that the following subpoena categories also are testimonial because, as in In re Grand Jury, 680 F.2d at 335, there is "nothing in the record that would indicate that the [SEC] knows, as a certainty, that each of the myriad documents demanded" is in the respondents' possession or control and, instead, the SEC is "attempting to compensate for its lack of knowledge by requiring the [respondents] to become . . . the primary informant[s] against [themselves]."  Compliance with the subpoena would require the respondents to provide information apparently not known to the government and which may be incriminating because:

Categories 1 and 2 fail to identify particular accounts known to the government and for which information is sought.  Instead, categories 1 and 2 require the respondent to divulge the identity of accounts "beneficially owned in whole or in part"; or to divulge the identity of accounts "owned by any entity over which you exercised any control"; or to divulge the identity of accounts from which the respondent "received a share of profits";

Category 3(b) requires the respondent to divulge entities over which he, she, or it "exercise[s] any control";

Category 4 requires the respondent to divulge the identities of his, her, or its "business and personal contacts";

15

Category 5 requires the respondent to divulge a "daily schedule of activities";

Category 6 requires the respondent to divulge the identities of any entities he, she, or it controls or in which he, she, or it owns a beneficial interest;

Category 7 requires the respondent to identify the email accounts he, she, or it maintains;

Category 8 requires the respondent to divulge the telephone or service providers utilized;

Category 9 requires the respondent to divulge the identities of organizations with which the specified individuals are "affiliated";

Category 10 requires the respondent to divulge the identities of representatives of the specified companies; and

Category 11 requires the respondent to divulge entities owned or controlled or in which the respondent owns a beneficial interest and to identify any entities owned or controlled by the identified individuals or companies or in which they own a beneficial interest.

Here, as in Hubble, it is apparent from the text of the subpoenas that the SEC needs the assistance of Ronald and Misty Touchard both to identify potential sources of information and to produce those sources.  Hubble, 530 U.S. at 41.  Also as in Hubble:

> [T]he Government has not shown that it had any prior knowledge
> of either the existence or the whereabouts of the . . . documents
> ultimately produced by respondent.  The government cannot cure
> this deficiency through the overbroad argument that a businessman
> such as respondent will always possess general business and tax
> records that fall within the broad categories described in the
> subpoena.

Id. at 44.[3]

_____

[3]A single category calls for materials for which the Fifth Amendment does not offer protection.  "Records and documents which are required by law to be kept, or to be disclosed to a public agency, are outside the scope of constitutional protection."  In re Grand Jury, 541 F. Supp.

Here, as in <u>Doe</u>, 465 U.S. 605, I find that the production of the documents commanded by the subpoenas served on Ronald and Misty Touchard (other than category 3(a)) would be testimonial insofar as it would relieve the government of its burden of establishing that the categories of documents exist, that Ronald and Misty Touchard are connected to the matters disclosed by the documents, and to establish the authenticity of the documents.  Moreover, here as in <u>Hubbell</u>, "it is undeniable that providing a catalog of existing documents fitting within [the] broadly worded subpoena categories could provide a prosecutor with a 'lead to incriminating evidence,' or 'a link in the chain of evidence needed to prosecute.'"  <u>Hubbell</u>, 530 U.S. at 42. Consequently, under the unique circumstances of this case and given the nature of the requests contained in the subpoenas, requiring Ronald and Misty Touchard to provide a detailed privilege log of the documents claimed to be subject to the protections of the Fifth Amendment (other than with respect to category 3(a) of the subpoenas) is testimonial, could be incriminating, and falls within the protection against self-incrimination.

B.  NEWPORT STOCKS; RMT CONSULTING;
AND TOUCHARD FAMILY TRUST

With respect to the subpoenas served on the entities controlled by the Touchards-- Newport Stocks, RMT Consulting, and Touchard Family Trust (the "Touchard Entities")--Mr. Einhorn responded by conceding that "a corporate custodian of records normally may not resist the production of corporate records on Fifth Amendment grounds."  Letter from Irving Einhorn dated 11/14/2011, Exh. 11, at p. 2.  However, Mr. Einhorn continued:

> [T]he rationale for requiring production by a custodian is that the

---

at *3.  Consequently, the respondents must, at a minimum, assert the Fifth Amendment privilege on a document-by-document basis with respect to the documents responsive to category 3(a).

act of the custodian is deemed an act of the corporation and not the individual.  Braswell v. United States, 487 U.S. 99, 118 (1988). As a result, the government may use the act production against the corporation.  The government, however, is prohibited from making evidentiary use of the act of production against the individual custodian.  Id.

* * *

In the case of a corporation that is owned and operated by a single individual, the above rationale for barring the custodian from asserting the Fifth Amendment privilege clearly does not apply. Where a custodian is the sole individual acting on behalf of a corporation, a jury cannot avoid concluding that the individual being prosecuted possessed, controlled and produced the corporate documents.  The Braswell Court specifically left open the question whether a records custodian, who is the sole employee and officer of the corporation, may invoke her Fifth Amendment privilege in response to a subpoena directed to a custodian or records for a corporation.  487 U.S. at 118, n. 11.  Under the circumstances, my clients will continue to assert their Fifth Amendment privileges against self incrimination and refuse to produce documents which are either personal or corporate under the act of production doctrine.

Id.

In Braswell v. United States, 487 U.S. 99 (1988), the president and sole shareholder of certain corporations was found by the trial court to be in contempt for refusing to produce books and records of the corporations commanded by a grand jury subpoena.  The Fifth Circuit Court of Appeals affirmed, as did the United States Supreme Court, ruling:

[W]ithout regard to whether the subpoena is addressed to the corporation, or as here, to the individual in his capacity as a custodian, a corporate custodian such as petitioner may not resist a subpoena for corporate records on Fifth Amendment grounds.

* * *

[T]he Court has consistently recognized that the custodian of corporate or entity records holds those documents in a representative capacity.  Artificial entities such as corporations may act only through their agents, and a custodian's assumption of his representative capacity leads to certain obligations, including the duty to produce corporate records on proper demand by the

Government.  Under those circumstances, the custodian's act of production is not deemed a personal act, but rather an act of the corporation.  Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation--which of course possesses no such privilege.

      \*    \*    \*

Although a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating, we do think certain consequences flow from the fact that the custodian's act of production is one in his representative rather than personal capacity.  Because the custodian acts as a representative, the act is deemed one of the corporation and not the individual.  Therefore, the Government concedes, as it must, that it may make no evidentiary use of the "individual act" against the individual.  For example, in a criminal prosecution against the custodian, the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual, the custodian.

Braswell, 487 U.S. at 109-10, 117-18.  But at note 11, the Supreme Court stated:

We leave open the question whether the agency rationale supports compelling a custodian to produce corporate records **when the custodian is able to establish, by showing for example that he is the sole employee and officer of the corporation,** that the jury would inevitably conclude that he produced the records.

Id. at 118 n.11 (emphasis added).

The Touchard Entities argue that they fall within Braswell's open question and that a "jury cannot avoid coming to the conclusion that Ronald or Misty Touchard possessed, controlled, and authenticated documents produced on behalf of these entities and had knowledge of their contents."  Response [Doc. # 8] at p. 5.

The Declaration of Ronald C. Touchard [Doc. # 44-1] establishes that Ronald and Misty Touchard are the only shareholders, directors, employees, or trustees of the Touchard Entities.  This showing is inadequate to fit within Braswell's open question, however, which contemplates

19

an entity with a single employee or officer.  In particular, in <u>Bellis v. United States</u>, 417 U.S. 85, 97-98 (1974), the Supreme Court ruled that a partner in a three member (dissolved) partnership could not properly refuse to produce partnership records.  Although a future jury in a criminal prosecution may know that the Touchard Entity records were produced by the entity's custodian, and that the entity had only two employees or officers, under <u>Braswell</u> "the Government may not introduce into evidence before the jury the fact that the subpoena was served upon and the corporation's documents were delivered by one particular individual. . . ." <u>Id</u>. at 118.  Thus, the jury would not know which of the two--Ronald or Misty--made the production.  This is all the protection that <u>Braswell</u> affords.

In addition, the Touchard Entities' argument that "[b]ecause the production of documents by Ronald Touchard or Misty Touchard as custodian of records for the Touchard entities would tend to incriminate them, they have properly asserted their Fifth Amendment privilege with respect to those subpoenas," Response [Doc. # 8] at p. 5, lacks merit.  The Supreme Court made clear in <u>Braswell</u> that "a corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating" and "[t]he Government has the right . . . to use the corporation's act of production against the custodian." <u>Braswell</u>, 487 U.S. at 117-18.

Under these circumstances, I find that requiring any Fifth Amendment protection concerning the Touchard Entity documents to be asserted in a particularized manner and document-by-document, <u>see</u> <u>Schmidt</u>, 816 F.2d at 1482, presumably through counsel, is not precluded by the Fifth Amendment protections afforded to Ronald and Misty Touchard.

### III.  BENJAMIN J. PORT

The subpoena served on Mr. Port is substantially identical to those served on Ronald and Misty Touchard individually.  Subpoena to Ben J. Port, Exh. 4.  Thus, under my analysis in Part II.A above, Mr. Port cannot consistent with the Fifth Amendment be compelled to provide a catalog of existing documents fitting within the broadly worded subpoena categories.  However, Mr. Port joined in the Joint Motion for Entry of Order [Doc. # 24], leading to the Order Compelling Compliance [Doc. # 31] which requires Mr. Port to prepare a Fifth Amendment "privilege log" as follows:

> [A] list of each document in his custody, control, or possession that is responsive to the July 21, 2011 administrative subpoena but that has been withheld on Respondent Port's good-faith belief that its production would violate Respondent Port's Fifth Amendment privilege against self-incrimination (the "Privilege Log").  As required by the July 21, 2011 administrative subpoena, the Privilege Log should describe each item separately, noting (a) its author(s); (b) its date; (c) its subject matter; (d) the name of the person who has the item now, or the last person known to have it; (e) the names of everyone who ever had a copy of it, and the names of everyone who was told the item's contents; and (f) the reason the item was not produced.  If, for any document, Respondent Port has a good-faith belief that disclosing a particular piece of information on the Privilege Log would violate Respondent Port's Fifth Amendment Privilege against self-incrimination, Respondent Port may omit that particular information, and only that information, from the Privilege Log. Respondent Port shall note on the Privilege Log what information he has omitted on Fifth Amendment grounds.

Order [Doc. # 31] at p. 2.

I have already found that responses to the SEC's subpoena categories would be tantamount to answering a series of interrogatories and the functional equivalent of an answer to

either a detailed written interrogatory or a series of oral questions at a discovery deposition.

Under these circumstances, requiring Mr. Port to prepare a detailed privilege log as described in

the Order [Doc. # 31] would violate his Fifth Amendment right against self incrimination.  Nor is

it possible to "note on the Privilege Log" the information Mr. Port "has omitted on Fifth

Amendment grounds" without violating the Fifth Amendment.

Consequently, I find that the Order [Doc. # 31], to which Mr. Port agreed, does not alter

the fact that the preparation of a detailed privilege log would violate his Fifth Amendment right

and that the procedure provided to avoid that violation is impracticable.  Under the facts of this

case, Mr. Port is not required to provide a detailed privilege log of the documents claimed to be

subject to the protections of the Fifth Amendment (other than with respect to category 3(a) of the

subpoena, see note 3 supra) in order to invoke his Fifth Amendment right against self

incrimination.

## IV.  ALAN M. ROTHMAN AND RBID.COM, INC.

The subpoena served on Mr. Rothman is substantially identical to those served on Ronald

and Misty Touchard individually.  Subpoena to Alan Rothman, Exh. 5.  Under my analysis in

Part II.A above, Mr. Rothman cannot consistent with the Fifth Amendment be compelled to

provide a catalog of existing documents fitting within the broadly worded subpoena categories.

Nor does the Order [Doc. # 32], entered on the joint motion of the SEC, Mr. Rothman, and

RBID.com purport to require a Fifth Amendment "privilege log."

Under the facts of this case, Mr. Rothman is not required to provide a detailed privilege

log of the documents claimed to be subject to the protections of the Fifth Amendment (other than

with respect to category 3(a) of the subpoena, see note 3 supra) in order to invoke his Fifth

Amendment right against self incrimination.

RBID.com enjoys no Fifth Amendment protection in its own right, and no evidence has been presented establishing that it falls within the <u>Braswell</u> open question.  Consequently, I find that requiring any Fifth Amendment protection concerning RBID.com's documents to be asserted in a particularized manner and document-by-document, <u>see</u> <u>Schmidt</u>, 816 F.2d at 1482, is not precluded by the Fifth Amendment protections afforded to Mr. Rothman.

## V.  KENYATTO JONES; PREZENSE, INC.; GLOBAL QX; AND NUTRIPURE BEVERAGES, INC.

The subpoena served on Mr. Jones is substantially identical to those served on Ronald and Misty Touchard individually.  Subpoena to Kenyatto M. Jones, Exh. 3.  Under my analysis in Part II.A above, Mr. Jones cannot consistent with the Fifth Amendment be compelled to provide a catalog of existing documents fitting within the broadly worded subpoena categories in order to invoke his Fifth Amendment right against self incrimination.

Prezense, Inc.; Global QX; and Nutripure Beverages, Inc., enjoy no Fifth Amendment protections in their own right, and no evidence has been presented establishing that they fall within the <u>Braswell</u> open question.  Consequently, I find that requiring any Fifth Amendment protection concerning the documents of Prezense, Inc.; Global QX; and Nutripure Beverages, Inc., to be asserted in a particularized manner and document-by-document, <u>see</u> <u>Schmidt</u>, 816 F.2d at 1482, is not precluded by the Fifth Amendment protections afforded to Mr. Jones.

## VI.  THE NON-RESPONDING DEFENDANTS

The remaining defendants have not appeared, and it is not apparent that they have been served with process in this action.  Accordingly, I make no findings or recommendation with respect to them.

## VII.  CONCLUSION

I respectfully RECOMMEND that the Order to Show Cause [Doc. # 7] be MADE ABSOLUTE in part and be DISCHARGED in part as follows:

(1)     DISCHARGED with respect to respondents Ronald Touchard, Misty Touchard, Benjamin J. Port, and Alan M. Rothman, and that they not be required to provide a detailed privilege log of the documents claimed to be subject to the protections of the Fifth Amendment (other than with respect to category 3(a) of the subpoenas, see note 3 supra) in order to invoke their Fifth Amendment rights against self incrimination;

(2)     MADE ABSOLUTE with respect to respondents Ronald Touchard, Misty Touchard, Benjamin J. Port, and Alan M. Rothman, and that they be required to provide a detailed privilege log of the documents claimed to be subject to the protections of the Fifth Amendment with respect to category 3(a) of the subpoenas in order to invoke their Fifth Amendment rights against self incrimination with respect to Category 3(a) documents; and

(3)     MADE ABSOLUTE with respect to respondents August, Inc.; Newport Stocks, Inc.; RMT Consulting, Inc.; Touchard Family Trust; RBID.com, Inc.; Prezense, Inc.; Global QX; and Nutripure Beverages, Inc., and that any claim for Fifth Amendment protection concerning their documents must be asserted in a particularized manner and document-by-document.

Dated November 29, 2012.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge